## LARKIN et al. v. TALLANT.

No. 33324.　March 22, 1949.

Rehearing Denied June 7, 1949.

*206 P. 2d 982.*

Geo. N. Otey and Champion, Champion & Wallace, all of Ardmore, for plaintiffs in error.

Champion & Fischl, of Ardmore, for defendant in error.

CORN, J. This is an appeal from a judgment rendered in plaintiff's favor in an action brought to recover for fraud and deceit allegedly practiced by defendants Paul Larkin, Elsie Larkin, and Joe Gibson, in a transaction growing out of an option agreement executed by plaintiff.

The first cause of action alleged that because of defendants' fraudulent and deceitful conduct plaintiff was induced to enter into a written optional agreement for purchase of a store owned by defendants; that although knowing plaintiff intended to exercise his option, defendants wrongfully failed to carry out their part of the agreement and consummated a sale with another party during the period of plaintiff's option and thereafter refused to refund the deposit made to secure the same. Plaintiff also pleaded a second cause of action wherein he alleged that by reason of defendants' fraud and deceit he had been damaged in the sum of $2,000.

Plaintiff garnished defendant's bank accounts as well as funds belonging to them but in the hands of the third party who purchased the store. The garnishment order was dissolved and discharged and plaintiff took no appeal from this ruling.

Defendants' motion to require plaintiff to elect between two causes of action was overruled and they answered by a general denial, plea of statute of frauds, and that plaintiff was relying upon inconsistent remedies. By cross-petition defendants claimed $1,200 actual damage and attorney's fees resulting from plaintiff's garnishment, and $1,300 exemplary damages for plaintiff's alleged malicious conduct in instituting garnishment proceedings to embarrass defendants.

By reply plaintiff made general denial of the allegations of the answer and cross-petition and upon the issues made the matter was tried to a jury and a verdict was returned for plaintiff for $700, and for defendants upon their cross-petition against plaintiff for $201. The trial court then rendered judgment against defendants in the sum of $499, from which judgment they have appealed. No judgment was rendered against defendant Gibson and he is not concerned in this appeal.

The facts as found by the jury, being supported by the evidence, may be summarized as follows: In July, 1946, plaintiff owned and operated a (National Home & Auto Store) in Emporia, Kan., under a franchise from the National Distributing Company. Defendant Gibson was the manager in charge of franchise arrangements in the Oklahoma City office. Defendants Larkin, husband and wife, owned and operated a National Home & Auto Store in Ardmore, Okla.

In the course of business plaintiff visited Gibson's office early in July. His attention was directed to a picture of defendants' store and Gibson advised him it could be bought for $14,000. Plaintiff stated he was interested in buying, but only if his own store could be sold first. Gibson then told plaintiff he would dispose of his store for him and enable him to purchase the Ardmore establishment, and proceeded to make arrangements for plaintiff and defendants to meet at a local hotel to discuss the matter. This meeting was held and plaintiff then made a trip to inspect the Ardmore store before returning to Emporia.

A few days thereafter Gibson arranged another meeting in Oklahoma City. At this time the discussion made it clear that plaintiff had no intention

of purchasing from defendants unless his own store was sold first, and he refused to enter into a $1,000 optional agreement. After further negotiations the parties reached an agreement, based upon Gibson's assurance that he would sell plaintiff's business, and the following option agreement was reduced to writing and signed by plaintiff and defendant Paul Larkin, husband of Elsie Larkin.

"National Home and Auto Stores, July 8, 1946.

"The following agreement between Paul Larkin, known as party of the first part and Bland Tallant, party of the second part, is herein entered into and agreed upon. Whereas the first party agrees to convey the store known as the National Home and Auto Store, 229 West Main, Carter County, Ardmore, Oklahoma, together with its entire contents including fixtures, $6,-000.00, merchandise, list price less 33 1/3%, plus 3% freight, established business and good will, $4,000.00, to the second party.

"The first party acknowledges receipt of checks totalling $600.00 as option which is to applied upon the total purchase price on or before September 1st, 1946. If second party fails to go through with the transaction, the said $600.00 is to remain in possession and ownership of the first party."

Plaintiff gave defendants his check for $500 and Gibson voluntarily gave defendant Paul Larkin a $100 check, ostensibly to show his good faith in the transaction, it being understood this was to be applied upon the fixtures and repaid by plaintiff upon completion of the transaction. Defendant cashed plaintiff's check, but Gibson's check later was returned to him.

Following this plaintiff returned to Emporia, but corresponded with Gibson concerning prospects for sale of the store, but it does not appear that Gibson exerted any effort to find a buyer. After September 1, 1946, in response to his own letter, plaintiff received a letter from defendants stating he had tried to co-operate in the matter, and professing to express regret over plaintiff's inability to exercise his option. Plaintiff then wrote demanding return of his deposit and defendants replied that he had forfeited any claim to the money by failing to go through with the transaction. Plaintiff thereupon brought this action.

It further appeared at the trial that one Paris, a resident of Tennessee, who purchased defendant's store, wrote to Gibson in response to an advertisement offering new franchises. Eventually a conference was arranged in Oklahoma City, on August 3, 1946, and at that time Gibson suggested the Ardmore store was for sale and made arrangements for Paris to inspect the store and discuss the matter with defendants, which Paris did. No information ever was given that plaintiff's store was for sale. Paris returned home, and after considering the matter wrote defendants concerning purchase of their home as well as the store. Some correspondence ensued and Paris signified his intention of purchasing the store, and on August 13, 1946, sent defendants a draft for $1,500 as earnest money deposit binding the transaction. This draft was indorsed and cashed by defendants August 19, 1946, and on August 30, 1946, defendants contracted to sell their residence in Ardmore to Paris. Thereafter defendants executed a bill of sale to this purchaser, dated September 16, 1946, and witnessed by Gibson, at a higher purchase price than that for which the store was offered to plaintiff.

The assignments of error upon which defendants seek reversal of this judgment are presented under two propositions. It is first contended that there is no competent evidence to authorize a judgment against defendants, their argument being that if plaintiff had a cause of action for fraud and deceit, he was only entitled to a rescission of the option and a return of his money, which defendants say only constituted a cause of action for rescission of a

contract under 15 O. S. 1941 §231 et seq. We are unable to see wherein any question of rescission enters into the matter.

"Rescission, or the act of rescinding, is where a contract is cancelled, annulled, or abrogated by the parties, or one of them." Black's Law Dictionary, De Luxe Ed., p. 1541; 54 C. J. p. 694.

Plaintiff did not seek to have the option agreement rescinded or abrogated. His petition pleaded, and his evidence was directed toward showing, that he was induced to enter into this agreement upon assurance and with the understanding that his store would be sold and that he would have until September 1, 1946, to exercise the option to purchase, but by reason of defendants' conduct he was prevented from carrying out any transaction under the option for two reasons: (1) Defendants' conduct deceived plaintiff into believing his store would be sold so that he could exercise his option; (2) while thus misleading plaintiff they fraudulently consummated a sale with a third party, making it impossible for plaintiff to exercise his option, but sought to forfeit his deposit for such failure.

Clearly, at the time plaintiff brought this action rescission could not be had so the parties could be placed in status quo. The only contract in existence was that between defendants and Paris, the third party who purchased the store. Shortly after plaintiff executed his agreement, defendants made performance an impossibility by their negotiation of the agreement with Paris, carried on in the face of plaintiff's outstanding option. The record is replete with evidence establishing either that defendants never had any intention of permitting plaintiff to avail himself of the option, or that shortly after accepting his agreement and deposit, they concluded a more advantageous, sale could be had with another party, but chose to deceive plaintiff as to the circumstances long enough for his option to lapse in order to claim a forfeiture of his deposit.

While it is true that fraud cannot be presumed, but must be clearly shown, it also is recognized that circumstances, by their number and joint operation and when corroborated by moral coincidences, may also constitute conclusive proof of fraud. Jones v. Anderson, 198 Okla. 304, 178 P. 2d 78. Attention has been directed to the circumstances surrounding this transaction. By their verdict the jury determined defendants' course of conduct amounted to fraud and deceit of plaintiff. In view of the record no reason exists for interfering with the verdict of the jury.

It is next contended by defendants that the trial court erred in refusing to require plaintiff to elect as to which of two causes of action he relied upon. Supporting this argument defendants rely upon numerous decisions of this court to the effect that a purchaser who is defrauded must elect whether to rescind the contract, return the property and sue for the purchase price, or affirm the contract and sue for damages. See Cummings et al. v. Board of Ed. of Oklahoma City, 190 Okla. 533, 125 P. 989, and cases therein cited.

We are of the opinion this argument is without substantial merit. There was no contract plaintiff might have sought to affirm, nor was there any agreement in existence upon which he could have predicated rescission. Plaintiff only sought recovery of his option money upon the ground the defendants' fraudulent and deceitful conduct had caused the impossibility of performance. The second cause of action was for damages alleged to have resulted from defendants' conduct.

Defendants did not point out in their pleadings, or on appeal to this court, wherein the relief sought by plaintiff was inconsistent. The authorities they rely upon are cases wherein a vendee of personal property has been fraudulently induced to purchase. In such cases the rule is unquestioned that the vendee either must rely upon the contract and a claim for damages, or seek rescission of the contract, restoration of the prop-

440

erty and return of the parties to the status quo.

Election of remedies is defined as being choice, shown by some overt act, between two or more inconsistent rights, either of which may be asserted at the will of the chooser alone. 18 Am. Jur., Election of Remedies, §3, citing Tulsa v. Wells, 79 Okla. 39, 191 P. 186. It is also said that the purpose of this doctrine is not to prevent recourse to a remedy, but simply to prevent double redress for a single wrong, but it is also true that election must be predicated upon a state of facts giving a party an option of adopting or rejecting one theory of action. See 18 Am. Jur. supra, §10; Whitney v. Whitney, 194 Okla. 361, 151 P. 2d 583.

Herein a different situation prevailed. Plaintiff had a right which he was bound to exercise within a specified period. Because of defendants' deceitful conduct, he not only was prevented from doing this, but defendants further removed any possibility of performance by fraudulently consummating a sale of the property with a third party.

It would be a peculiar rule indeed which would decree that a party could grant an option and by his own conduct make it impossible of performance, but that the holder of the option must elect to sue to recover his deposit without claiming damages, or forfeit his deposit and seek recovery for his damages which possibly might not be so susceptible of proof. We decline to pronounce such a rule.

Judgment affirmed.

WELCH, LUTTRELL, H A L L E Y, JOHNSON, and O'NEAL, JJ., concur. DAVISON, C.J., ARNOLD, V.C.J., and GIBSON, J., dissent.